UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 JUL -8 PM 5: 01

CLERK
BY_____
DEPUTY CLERK

| | |
|---|---|
| BROADCAST MUSIC, INC., HOUSE OF CASH, INC., SONY/ATV TREE PUBLISHING, POST OAK PUBLISHING, SHOWBILLY MUSIC, EMI BLACKWOOD MUSIC INC., <br><br> Plaintiffs, <br><br> v. <br><br> LITTLE CITY CIDER COMPANY, LLC and GREG VIDETTO, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 2:24-cv-01300 |

**ENTRY ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**
(Doc. 9)

Plaintiffs Broadcast Music, Inc. ("BMI"), House of Cash, Inc., Sony/ATV Tree Publishing, Post Oak Publishing, Showbilly Music, and EMI Blackwood Music Inc. bring this action against Defendants Little City Cider Company, LLC ("Little City Cider") and Greg Videtto for willful copyright infringement based on Defendants' alleged unauthorized public performance of five musical compositions. Pending before the court is Plaintiffs' March 17, 2025 motion for default judgment. No opposition was filed.

Plaintiffs are represented by Matthew S. Borick, Esq. Defendants have not appeared in this action.

**I.    Procedural Background.**

On November 26, 2024, Plaintiffs filed a Complaint alleging five claims of copyright infringement. (Doc. 1.) The executed summonses were returned on December 27, 2024, indicating that Defendants were served on December 18, 2024. (Docs. 5, 6.)

Neither Defendant filed an answer or otherwise responded to the Complaint, and on January 17, 2025, Plaintiffs applied for an entry of default against Defendants. (Doc. 7.) The clerk entered default as to Defendants on January 21, 2025. (Doc. 8.)

## II.    Findings of Fact.

The following findings of fact are derived from the Complaint's allegations, which are taken as true,[1] and the exhibits and declarations filed with Plaintiffs' motion for default judgment.

BMI "has been granted the right to license the public performance rights in 22.4 million copyrighted musical compositions . . . including those that are alleged herein to have been infringed." (Doc. 1 at 1-2, ¶ 3.) Each of BMI's co-plaintiffs owns the copyright to at least one of the musical compositions at issue in this case and has granted BMI the right to license the corresponding public performance rights.

Little City Cider is a limited liability company that operates, maintains, and controls an establishment named Little City Cider Company (the "Cider Establishment") in Bennington, Vermont. In connection with the operation of the Cider Establishment, Little City Cider "publicly performs musical compositions and/or causes musical compositions to be publicly performed." *Id.* at 3, ¶ 11. Mr. Videtto is a member of Little City Cider "with responsibility for the operation and management" of Little City Cider and the Cider Establishment, "a direct financial interest" in these entities, and "the right and ability to supervise the activities of" his codefendant. *Id.* at 3, ¶¶ 13-14.

Attached to the Complaint is a Schedule identifying the titles of five musical compositions[2] as well as the compositions' writers, "Publisher Plaintiff(s)[,]" copyright registration numbers and dates of registration. (Doc. 1-1 at 1.) For each song, the

---

[1] *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (observing "the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true").

[2] The musical compositions are "Folsom Prison a/k/a/ Folsom Prison Blues[,]" "Here's A Quarter a/k/a/ Here's A Quarter (Call Someone Who Cares)[,]" "Mama Tried[,]" "Neon Moon[,]" and "Wild Thing[.]" (Doc. 1-1.)

Schedule also lists October 5, 2024 as the "Date[] of Infringement" and identifies the "Place of Infringement" as the Cider Establishment. *Id.*

The Publisher Plaintiff for each composition in the Schedule "was (and still is) the owner of the copyright in the respective musical composition[.]" *Id.* at 5, ¶ 21. "For each work identified on the Schedule, on the date[] listed . . . Defendants publicly performed and/or caused to be publicly performed at the [Cider] Establishment the musical composition identified . . . without a license or permission to do so." *Id.* at 5, ¶ 22. "In the last two years, BMI has reached out to Defendants more than thirty (30) times, by phone, mail, and email, in an effort to educate Defendants as to their obligations under the Copyright Act with respect to the necessity of purchasing a license for the public performance of musical compositions" owned by BMI, including by sending cease and desist notices "providing Defendants with formal notice that they must immediately cease all use of BMI-licensed music" at the Cider Establishment. *Id.* at 3, ¶ 16.

Declarations from Anthony Adewumi, a BMI attorney, and John "Jack" Flynn, BMI's assistant vice president for licensing; a Certified Infringement Report; correspondence allegedly sent by BMI to Defendants regarding their use of Plaintiffs' copyrighted works; and an affidavit prepared by Plaintiffs' attorney, Mr. Borick, supplement the complaint.[3] Mr. Flynn's declaration states that "[u]pon information and

---

[3] To evaluate a defendant's liability on a motion for default judgment, the court may not consider documents outside the pleadings. *See J&J Sports Prods., Inc. v. Abdelraouf*, 2019 WL 457719, at *4 (E.D.N.Y. Feb. 5, 2019) ("The reason for this rule is simple: a default judgment cannot be entered unless a defendant was given adequate notice of the claims alleged by plaintiff; notice, in turn, is established by the facts alleged in the complaint."). However, "[t]here must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Busrel Inc. v. Dotton*, 2025 WL 814775, at *4 (W.D.N.Y. Mar. 13, 2025). The court also has discretion to require additional proof of the Complaint's allegations before granting default judgment. *Henry v. Oluwole*, 108 F.4th 45, at 55 (2d Cir. 2024) ("Only after the district court is convinced that the facts meet the elements of the relevant cause of action—whether those facts are established by well-pleaded allegations or proven by admissible evidence—may the district court enter a default judgment."). The court thus considers the materials attached to the pending motion to decide whether Plaintiffs' damages have a sufficient evidentiary basis and to the extent it requires additional proof of the allegations in the Complaint.

belief, the Defendants are still publicly performing music licensed by BMI at Little City Cider Company and BMI has not received an executed license from the Defendants[,]" and, if Defendants had "entered into an agreement at the time BMI first contacted them in January 2023, the estimated license fees between January 2023 and the present would have been approximately $8,690.00" and the "current annual license fee would be approximately $3,030.00." (Doc. 9-3 at 4, ¶ 16.) An unsigned copy of BMI's music license, which was allegedly included with a letter mailed to Defendants on March 23, 2023, calculates Defendants' annual license fee for using BMI's music as $2,250.00. (Doc. 9-5 at 11.)

According to Mr. Flynn's declaration, "in order to protect the rights of the publishers and writers affiliated with BMI, Robert Cahoon was authorized to visit Little City Cider Company and make an audio recording and written report of the music being publicly performed on the evening of October 5, 2024." (Doc. 9-3 at 2-3, ¶ 9.) The Certified Infringement Report is dated October 5, 2024 and includes a table titled "SONG/SELECTIONS PERFORMED" that identifies a few dozen musical compositions, including the five identified in the Schedule, with corresponding timestamps and other details regarding the performance of these works at the Cider Establishment on October 5, 2024. The report includes a diagram of the Cider Establishment showing, among other things, a stage, bar, and dance floor. It lists the estimated occupancy as 500 and estimated size of the crowd as 150. The report includes a certification by Mr. Cahoon stating that he "was retained by [BMI] . . . to visit an eating and drinking establishment known as Little City Cider Company, 139 Shields Dr, Bennington, VT and make a written record of and a digital recording of the music that was played at the establishment." (Doc. 9-4 at 8.) The certification also states that Mr. Cahoon sent the digital recording to BMI's general licensing department on October 8, 2024. Attached to the certification is an October 15, 2024 declaration in which John Davis states that he is employed by BMI, was asked to listen to the recording sent by Mr. Cahoon, and "was able to identify and/or confirm the musical compositions performed." *Id.* at 9.

4

The affidavit of Attorney Borick identifies the time incurred in representing Plaintiff in this case and states he spent a total of 22.9 billed hours for $8,868.50 in attorney's fees. (Doc. 9-6 at 2.) The affidavit also identifies $576.68 incurred by Plaintiffs for case filing, PACER, postage, and sheriff's fees.

## III.    Conclusions of Law and Analysis.

### A.    Standard of Review.

Under Fed. R. Civ. P. 55, obtaining a default judgment against a party is a two-step process. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *see also Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation."). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Id.* (footnote omitted).

Before entering a default judgment, the court is "required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." *Moore v. Booth*, 122 F.4th 61, 69 (2d Cir. 2024) (internal quotation marks omitted) (quoting *City of New York*, 645 F.3d at 137). Because a defendant who fails to answer or otherwise defend a complaint is "deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability[,]" *Finkel v. Romanowicz*, 577 F.3d 79, 81 n.1 (2d Cir. 2009), in conducting its liability analysis, the court is "required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" *Id.* at 84 (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

However, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d

5

Cir. 1999). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* This inquiry is also twofold: the court must first "determin[e] the proper rule for calculating damages" on the particular claim. *Id.* The court then "assess[es] [the] plaintiff's evidence supporting the damages to be determined[.]" *Id.* "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

Regardless of the evidence presented, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) ("By limiting damages to what is specified in the 'demand for judgment,' [Rule 54(c)] ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer.") (footnote omitted).

### B.   Whether Defendants are Liable for Copyright Infringement.

Under the Copyright Act, copyright owners have "exclusive rights to do and to authorize[,]" in the case of musical works, the ability "to perform the copyrighted work publicly[.]" 17 U.S.C. § 106; *see Nat'l Football League v. PrimeTime 24 Joint Venture*, 211 F.3d 10, 11 (2d Cir. 2000) ("[T]he owner of a copyright has the exclusive right publicly to perform and display the copyrighted material."). The Copyright Act defines the act of performing or displaying a work "publicly" to include "perform[ing] or display[ing] it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered[.]" 17 U.S.C. § 101. "Courts have broadly concluded that a copyrighted work has been publicly performed when it is played in a business establishment open to the public." *Elohim EPF USA, Inc. v. 162 D & Y Corp.*, 707 F. Supp. 3d 372, 395 (S.D.N.Y. 2023).

6

To make a claim for copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Abdin v. CBS Broadcasting Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (internal quotation marks omitted) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). "The word copying is shorthand for the infringing of any of the copyright owner's five exclusive rights described in § 106." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (internal quotation marks and citation omitted).

In this case, the Complaint and attached Schedule identify the publishers, titles, and copyright registration numbers and dates for each of the five allegedly infringed musical compositions and state which of the Plaintiffs owns each composition. Because Defendants, by virtue of their default, have admitted to these facts, Plaintiffs have established ownership of a valid copyright in the five allegedly infringed works. *Broadcast Music, Inc. v. DeJohn's on Lark, Inc.*, 2020 WL 1986903, at *2 (N.D.N.Y. Apr. 27, 2020) (finding that schedule identifying musical works' authors and publishers, dates of copyright registration, and registration numbers was sufficient to state ownership of valid copyright); *see also Broadcast Music, Inc. v. Pamdh Enterprises, Inc.*, 2014 WL 2781846, at *2 (S.D.N.Y. June 19, 2014) (granting motion for default judgment where "[p]laintiffs state that they are the copyright owners and authorized licensor of the public performance rights of the musical works at issue").

The Complaint and Schedule also allege that, in connection with the operation of the Cider Establishment, Defendants publicly performed or caused to be publicly performed each of the five compositions on October 5, 2024 at Little City Cider Company without the copyright owner's permission. These allegations, accepted as true, are sufficient to establish the second element of copyright infringement. *See Pamdh Enterprises*, 2014 WL 2781846, at *2 (granting default judgment where plaintiffs alleged that "Defendants publicly performed the musical works without a license or permission").

All individuals "who participate in, exercise control over or benefit from an infringement are jointly and severally liable as copyright infringers." *Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 513 (S.D.N.Y. 2018) (emphasis and

7

internal quotation marks omitted) (quoting *Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985)). Because the facts establish that Little City Cider infringed Plaintiffs' copyrights and that Mr. Videtto is responsible for Little City Cider's operation and management and has a direct financial interest in the company, Defendants are jointly and severally liable for the infringement.

Even when the Complaint states a facial cause of action, the court may "'require proof of necessary facts' to establish liability" before granting default judgment. *Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024) (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). In this case, the allegations in the Complaint are further supported by Mr. Flynn's declaration and Mr. Cahoon's Certified Infringement Report. *See, e.g., De John's on Lark*, 2020 WL 1986903, at \*3 (relying on certified infringement reports to show public performance); *Broadcast Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 192 (S.D.N.Y. 2016) (finding element of public performance established by certified infringement reports and declaration attesting that allegedly infringed works were publicly performed at defendant's establishment on certain evenings); *Broadcast Music, Inc. v. 3817 Pacific LLC*, 2024 WL 3451885, at \*5 (D.N.J. July 18, 2024) ("A plaintiff can establish that a public performance occurred by introducing a certified report that an investigator compiles after visiting the allegedly infringing establishment.").

The court thus GRANTS Plaintiffs' motion for default judgment against Defendants jointly and severally as to each of Plaintiffs' five copyright infringement claims.

### C.    Whether Plaintiffs are Entitled to Statutory Damages.

The Copyright Act allows copyright owners to obtain either actual damages and any additional profits of the infringer or statutory damages. 17 U.S.C. § 504(a). "[W]ith respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally," a prevailing plaintiff may recover "a sum of not less than $750 or more than $30,000 as the court considers just." *Id.* § 504(c)(1). If the court finds the infringement was willful, it may increase the award of statutory damages up to $150,000. *Id.* § 504(c)(2). "The 'district judge has wide

8

discretion in setting the statutory damage award.'" *Christian Dior Couture SA v. Lin*, 744
F. Supp. 3d 312, 316 (S.D.N.Y. 2024) (quoting *Island Software and Computer Serv., Inc.
v. Microsoft Corp.*, 413 F.3d 257, 265 (2d Cir. 2005)). When determining the amount of
statutory damages, courts consider:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned,
> by the infringer; (3) the revenue lost by the copyright holder; (4) the
> deterrent effect on the infringer and third parties; (5) the infringer's
> cooperation in providing evidence concerning the value of the infringing
> material; and (6) the conduct and attitude of the parties.

*Castillo v. G&M Realty L.P.*, 950 F.3d 155, 171-72 (2d Cir. 2020) (quoting *Bryant v.
Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010)).

As to the first factor, "copyright infringement is deemed willful by virtue of
defendant's default." *ACE Pictures, Inc. v. Tech Times LLC*, 2023 WL 6444835, at *3
(S.D.N.Y. Oct. 3, 2023) (internal quotation marks omitted) (quoting *Rovio Ent., Ltd. v.
Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015)). Due to Defendants'
failure to appear in this action, it is difficult for the court to evaluate the second, fifth, or
sixth factors.

With respect to the third factor, Mr. Flynn's declaration states that BMI's current
annual license fee would be approximately $3,030 and the estimated licensing fees from
January 2023 to the present would have been approximately $8,690 if Defendants had
entered into a licensing agreement when BMI first contacted them. As to the fourth
factor, other courts "have held that a damages award three times the amount of
[p]laintiff's licensing fee is sufficient to accomplish both specific and general
deterrence." *See Hirsch v. Sell It Social, LLC*, 2020 WL 5898816, at *4 (S.D.N.Y. Oct. 5,
2020); *Prana Hosp.*, 158 F. Supp. 3d at 199 (noting that "Second Circuit case law—
including numerous cases brought by BMI—reflects that courts in this Circuit commonly
award, in cases of non-innocent infringement, statutory damages of between three and
five times the cost of the licensing fees the defendant would have paid").

Plaintiffs request $27,000 total in statutory damages for their five claims, which
amounts to an award of $5,400 for each claim. In similar cases, courts in the Second

Circuit have granted statutory damage awards ranging from $4,000 to $20,000 per infringement. *See Broadcast Music, Inc. v. My Image Studios LLC*, 2020 WL 2115329, at *4 (S.D.N.Y. May 4, 2020) (awarding $20,000 per infringement for infringement of six musical works where defendants missed discovery deadlines and "continued to host musical performances" during litigation); *DeJohn's on Lark*, 2020 WL 1986903, at *4 (awarding $12,500 per infringement in default judgment for willful infringement of seven musical works); *Broadcast Music, Inc. v. The Living Room Steak House, Inc.*, 2016 WL 756567, at *6 (E.D.N.Y. Feb. 26, 2016) (awarding $5,000 per infringement in default judgment for willful infringement of five musical works); *Broadcast Music, Inc. v. Wexford INR LLC*, 2014 WL 4626454, at *11 (N.D.N.Y. Sept. 15, 2014) (awarding $4,000 per infringement on summary judgment for willful infringement). Because Defendants' infringement was willful and because Plaintiffs' requested award is within the range of what Second Circuit courts typically grant for non-innocent infringement, the court GRANTS Plaintiffs' request for a judgement in the total amount of $27,000 in statutory damages against Defendants, jointly and severally.

### D. Whether Plaintiffs are Entitled to a Permanent Injunction.

In addition to damages, Plaintiffs seek an order permanently enjoining Defendants "from infringing, in any manner, the copyrighted musical compositions licensed by" BMI. (Doc. 9-7 at 2.) The Copyright Act allows courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 322 (2d Cir. 2022) (*quoting eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

"[C]ourts routinely find the harm suffered by plaintiffs in copyright cases to be 'irreparable' on the theory that lost sales or diminished reputation can be difficult if not

impossible to measure." *Prana Hosp.*, 158 F. Supp. 3d at 195 (citing *Beastie Boys v. Monster Energy Co.*, 87 F. Supp. 3d 672, 677 (S.D.N.Y. 2015)). Plaintiffs argue that "there is a substantial likelihood that the infringing conduct will continue[,]" (Doc. 9-1 at 7) and Mr. Flynn's declaration, which is dated March 5, 2025, states that "[u]pon information and belief, the Defendants are still publicly performing music licensed by BMI at Little City Cider Company" without permission. (Doc. 9-3 at 4.)

Defendants' failure to appear in this lawsuit, as well as the fact that Defendants' infringement occurred after Plaintiffs attempted multiple times to enter a license agreement with them, show a threat of continuing infringement. *See Stokes v. MilkChocolateNYC LLC*, 681 F. Supp. 3d 226, 243 (S.D.N.Y. 2023) (finding plaintiff had established threat of continuing violations because defendant failed to appear in lawsuit and continued to engage in infringing conduct). This establishes both irreparable injury and that monetary damages are inadequate to fully compensate Plaintiffs for the harm they have suffered and will continue to suffer absent injunctive relief. *See id.* (finding threat of continuing infringement satisfied first and second factors for injunctive relief); *see also Serio v. Skijor, USA, Inc.*, 2023 WL 8372894, at *6 (S.D.N.Y. Dec. 4, 2023) (same).

The balance of hardships weighs in favor of Plaintiffs because the requested injunction would only prohibit Defendants from infringing Plaintiffs' copyrights, which Defendants are required by law to refrain from doing. *See Broadcast Music, Inc. v. Buffalo Wing Joint & Pub, LLC*, 431 F. Supp. 3d 147, 157 (W.D.N.Y. 2019) (noting that "[r]equiring plaintiffs to commence litigation for each future violation would be an extreme hardship, while preventing defendants from continually infringing on plaintiffs' copyrighted material is not") (alteration in original) (internal quotation marks omitted) (quoting *Buttnugget Publ'g v. Radio Lake Placid, Inc.*, 807 F. Supp. 2d 100, 109 (N.D.N.Y. 2011)). Accordingly, "the permanent injunction would serve the public interest by prohibiting the infringing conduct in furtherance of copyright law." *The Living Room Steak House*, 2016 WL 756567, at *7. The court therefore GRANTS Plaintiffs'

request for a permanent injunction and HEREBY PERMANENTLY ENJOINS[4] Defendants from infringing, in any manner, the copyrighted musical compositions licensed by BMI.

### E.    Whether Plaintiffs are Entitled to Attorney's Fees and Costs.

Pursuant to 17 U.S.C. § 505, the court has discretion to allow recovery of costs and award a reasonable attorney's fee to a prevailing copyright plaintiff. "When determining whether to award attorney[']s fees, district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). Except in "unusual circumstances[,] attorneys are required to submit contemporaneous records with their fee applications." *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010). "These records must 'specify, for each attorney, the date, the hours expended, and the nature of the work done.'" *Capax Discovery, Inc. v. AEP RSD Invs., LLC*, 2023 WL 140528, at *7 (W.D.N.Y. Jan. 10, 2023) (quoting *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).

Plaintiffs seek $9,445.18 in attorney's fees and costs. They submit an affidavit by Attorney Borick that states the total amount of attorney's fees and costs incurred by Plaintiffs, the total number of hours billed, a list of activities Attorney Borick performed for the case, and a list of expenditures for case filing and other fees. Plaintiffs have not submitted receipts or invoices, and Attorney Borick's affidavit does not state how many hours he billed for the listed activities or the dates they were performed. Accordingly, the court has insufficient information to determine whether the hours billed for each task were reasonable. *See Busrel Inc. v. Dotton*, 2022 WL 17075707, at *3 (W.D.N.Y. Nov. 18, 2022) ("Without any indication of the amount of time spent on discrete tasks, the court cannot determine whether the hours incurred by Plaintiff's counsel are reasonable."). The court thus DENIES without prejudice Plaintiffs' request for attorney's

---

[4] "Unlike a preliminary injunction, a permanent injunction does not require a bond." *Broker Genius Inc. v. Seat Scouts LLC*, 2019 WL 3026754, at *3 (S.D.N.Y. July 11, 2019).

fees and costs. Plaintiffs may, within 14 days from the date of this Order, "file an amended affidavit and contemporaneous time records specifying the dates, time spent, and work done to support the request for attorney['s] fees." *Broadcast Music, Inc. v. L-Bar, LLC*, 2019 WL 13272515, at *6 (D. Conn. Aug. 7, 2019) (denying request for attorney's fees without prejudice because they were not supported by contemporaneous time records).

### F.    Post-judgment Interest.

Plaintiffs seek post-judgment interest on their award pursuant to 28 U.S.C. § 1961, which provides for interest "on any money judgment in a civil case recovered in a district court . . . calculated from the date of the entry of the judgment[.]" 28 U.S.C. § 1961(a). The court GRANTS Plaintiffs' request for interest, to be calculated in accordance with the formula set forth in § 1961. *See Tetra Images, LLC v. Grahall Partners, LLC*, 2021 WL 2809566, at *7 (S.D.N.Y. July 6, 2021) (granting post-judgment interest on default judgment for copyright infringement).

### CONCLUSION

For the reasons set forth above, the court GRANTS in part and DENIES in part Plaintiffs' motion for default judgment, (Doc. 9), as follows:

1. Copyright infringement claims: GRANTED. Judgment is entered in Plaintiffs' favor and against Defendants, in the amount of $27,000 USD in statutory damages, with post-judgment interest accruing according to 28 U.S.C. § 1961.

2. Defendants; their respective agents, servants, and employees; and all persons acting under their respective permission or authority, shall be permanently enjoined and restrained from infringing, in any manner, the musical compositions identified in the Schedule attached to the Complaint (Doc. 1-1) and all other copyrighted musical compositions licensed by Broadcast Music, Inc., pursuant to 17 U.S.C. § 502.

3. Attorney's fees and costs in the amount of $9,445.18: DENIED without prejudice with leave to renew the motion within 14 days of the date of this Order.

SO ORDERED.

13

Dated at Burlington, in the District of Vermont, this 8th day of July, 2025.

Christina Reiss, Chief Judge
United States District Court